IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Susan Hoyer,                                Case No. 3:10 CV 1552

               Plaintiff,           MEMORANDUM OPINION
                                      AND ORDER

    -vs-

                                      JUDGE JACK ZOUHARY

Fostoria Community Hospital,

               Defendant.

## INTRODUCTION

In this case, Plaintiff Susan Hoyer ("Hoyer") alleges her former employer, Fostoria Community Hospital ("Hospital"), violated Ohio law when it terminated her following a workplace accident. She also claims the Hospital unlawfully failed to reasonably accommodate her disability in violation of the Americans with Disabilities Act ("ADA").

Pending before this Court is the Hospital's Motion for Summary Judgment (Doc. No. 21). Hoyer opposed (Doc. No. 33); the Hospital replied (Doc. No. 34); and Hoyer filed a sur-reply (Doc. No. 37).

## BACKGROUND

Hoyer began working for the Hospital in 1988, first as a receptionist, and later as a health unit coordinator, the position she held until her termination in February 2010. Hoyer's tasks as health unit coordinator included, among other things, scheduling and registering patients, maintaining patient files, and answering phones (Doc. No. 22-2 at 2–3; Doc. No. 22-1; Doc. No. 32 at 84, 87).

In October 2009, Hoyer suffered an electrical shock while plugging in a copy machine at work (Doc. No. 24-1 at 10 (Hoyer Dep. at 38–41)).[1] The jolt brought Hoyer to her knees, leaving her nauseous and disoriented (*id.* at 11 (Hoyer Dep. at 42–43)). A nurse then drove Hoyer to the emergency room where she tested normal and she was ultimately released (*id.* at 11–12 (Hoyer Dep. at 43, 46–47)).

Hoyer returned to work the following day, but continued to experience pain and nausea (*id.* at 13 (Hoyer Dep. at 50)). After another trip to the emergency room, Hoyer scheduled an appointment with the Hospital's occupational medicine department (*id.* at 14 (Hoyer Dep. at 53–55)). The occupational medicine physician cleared Hoyer to return to work, but noted her "mentation may be slower than normal" and she "may require more time to accomplish previous tasks" (Doc. No. 22-2 at 12).

As predicted, Hoyer returned to work but struggled to keep up with her duties (Doc. No. 24-1 at 15 (Hoyer Dep. at 57)). On two separate occasions, Hoyer asked her supervisor, Betsy Faeth, to provide a "helper" to assist Hoyer in completing tasks (*id.* at 15, 17 (Hoyer Dep. at 58, 68)). Each time, Faeth responded she was unable to provide a helper because no one was available, but that Hoyer should simply "do what she could do" and to "do one thing at a time" (*id.*). Nevertheless, Hoyer's difficulties continued until October 8 when she was referred to a neurologist, Dr. Khalid Mahmood, who put Hoyer off work for the next two weeks (Doc. No. 22-2 at 19–20).

Hoyer then applied for and was granted Family and Medical Leave Act ("FMLA") leave through October 26 (*id.* at 17–24). The Hospital notified Hoyer she had already used seven weeks of

---

[1] Because the deposition transcripts filed with the Court are formatted to include four deposition pages on each .pdf page, citations to deposition transcripts include both a citation to the .pdf page number as well as the deposition transcript page.

2

FMLA leave, but was eligible for an additional five, during which her job was guaranteed, plus fourteen weeks where her job was not guaranteed (*id*. at 23–24). When Hoyer's five weeks of job-secure FMLA leave expired on November 13, however, she had yet to be cleared by her doctors to return to work (*see id.* at 31), and Hoyer then began using her additional fourteen weeks of medical leave. The Hospital subsequently hired a replacement (Doc. No. 31 at 93).

Hoyer continued to submit notes from her physician, Dr. Terrence Fondessy, through January 2010 excusing her from work and characterizing her as "totally disabled" (Doc. No. 22-2 at 27–28, 33–39). Indeed, Hoyer did not receive work clearance until late January 2010 (*id.* at 38), but the Hospital had already hired a replacement during Hoyer's extended leave period. Hoyer was still eligible for rehire, however, and spoke with Human Resources Manager Autumn Clouse about applying for positions within the Hospital (Doc. No. 24-1 at 35 (Hoyer Dep. at 137)); Hoyer, however, did not apply for any available positions (*id.* (Hoyer Dep. at 138)). After twenty-six weeks of total leave, the Hospital terminated Hoyer on February 19, 2010.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**DISCUSSION**

**Disability Discrimination Claim**

Hoyer first alleges the Hospital terminated her employment "because of" her disability, in violation of R.C. § 4112.02. The parties agree that the Ohio disability discrimination statute parallels the requirements of the federal ADA statute, and this Court may look to federal law in its interpretation of Ohio law. *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 413, 418 (6th Cir. 2004).

To prevail, Hoyer can either put forth "direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision, or by introducing indirect evidence of discrimination . . . ." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). Because Hoyer has not put forth any direct evidence of discrimination, the burden-shifting framework of *McDonnell Douglas* governs her claim of disability discrimination. *Id.* at 1184–85; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). That familiar framework works as follows: a plaintiff must first establish a *prima facie* case of discrimination by showing (1) she is an individual with a disability; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she was discharged solely because of her handicap. *Monette*, 90 F.3d at 1178, 1186. If she satisfies that obligation, the burden shifts to the employer to offer a "legitimate, nondiscriminatory" reason for its action. *Id.* at 1179, 1186. If the employer does so, the burden shifts back to the plaintiff to establish that the employer's proffered reason is merely a pretext for unlawful discrimination. *Id.* at 1186–87. *Shoemaker v. E.I. Dupont De Nemours & Co.*, 405 F. App'x 16, 18 (6th Cir. 2010)

For purposes of its Motion, the Hospital concedes Hoyer was disabled (Doc. No. 21 at 15), but nonetheless contends Hoyer still cannot make out a *prima facie* case for two reasons: (1) she could not perform all the essential functions of her job because she was not cleared to return to work until after her former position had been filled; and (2) Hoyer cannot demonstrate she was terminated "because of" her disability.  The Hospital claims it needed to fill Hoyer's position prior to her return to work because another full-time employee, the clinic's RN, was going on leave in December 2009, which would have left the Hospital to cover the job duties of two employees.  Therefore, the Hospital says, Hoyer was terminated because her position was filled while she was on extended leave.

Hoyer first counters she could perform all the functions of her job, just not as quickly as before her injury (Doc. No. 33 at 15–16).  Hoyer also vociferously contends, contrary to the Hospital's assertions, that "multi-tasking" was not one of her essential job functions (*id.* at 9–12).  In fact, as discussed more below, Hoyer claims none of her job duties were "essential" (*id.* at 14–15).

Although the parties devote a great deal of energy addressing the issue, whether multi-tasking was an essential function of Hoyer's job matters little here because the record evidence demonstrates she could not perform *any* of her job duties prior to January 25, 2010 -- the date she was cleared to return to work.  Hoyer's physicians certified she was not able to return to work, even with restrictions (Doc. No. 22-2 at 21, 36, 38–39).  Hoyer's primary physician, Dr. Fondessy, indicated on his evaluation form Hoyer was "totally disabled from work" (*id.* at 36, 38).  Similarly, Hoyer's neurologist, Dr. Mahmood, noted in his evaluation that Hoyer was "unable to perform any of his/her job functions due to the condition" (*id.* at 21).

Although either doctor could have cleared Hoyer to return to work with restrictions, neither did so.  In light of these doctors' evaluations, Hoyer cannot demonstrate she could perform all the

5

essential functions of her job prior to January 25, thus precluding her from establishing a *prima facie* case. *See Manigan v. Sw. Ohio Reg'l Transit Auth.*, 385 F. App'x 472, 478 (6th Cir. 2010); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998). And although Hoyer argues she could have returned to work prior to January 25 -- in fact, "begged" her doctor to approve her return -- she has not pointed to any evidence supporting that argument. Nor has she shown that she asked the Hospital to return prior to that date. To the contrary, she continued to submit notes to the Hospital from Dr. Fondessey excusing her from work through January 2010 (*See, e.g.,* Doc. No. 22-2 at 39).

Likewise, Hoyer cannot demonstrate the Hospital discharged her "because of" her disability once she was cleared to return to work. Hoyer has failed to put forth *any* evidence suggesting she was discharged "because of" her disability, nor did she bother to address this point in either her opposition or sur-reply.

And even if Hoyer could establish a *prima facie* case, she has failed to rebut the Hospital's legitimate, nondiscriminatory reason for her termination: Hoyer's former position was no longer available. The Hospital contends it needed to fill Hoyer's position because it did not have anyone to cover her job duties during her leave. The Hospital did not have casual employees who could fill in and cover Hoyer's job, and so it tried to pull employees from different departments to do so, but to no avail (Doc. No. 25-2 at 13–14 (Faeth Dep. at 159–61)). Furthermore, the clinic's RN was going on FMLA leave in December 2009 (*id.* at 2 (Faeth Dep. at 17)) and it was not entirely clear when Hoyer would return to work, in light of the many extensions of leave she received (Doc. No. 22-2 at 27–28, 33–39). If the Hospital had kept Hoyer's position open, it would have been left to cover the duties of two full-time employees on leave. Under the facts of this case, filling Hoyer's position in

6

her absence was not unreasonable. *See Monette*, 90 F.3d at 1187–88 (stating it was "entirely reasonable" to fill plaintiff's position in his absence when it was unclear when or if he would return).

This came as no surprise to Hoyer. She testified that she knew her job was not guaranteed during the fourteen-week medical leave following exhaustion of her FMLA (Doc. No. 24-1 at 25, 30 (Hoyer Dep. at 97–98, 119–200)), which is when her job was filled (Doc. No. 25-1 at 4 (Clouse Dep. at 93)). In fact, the Hospital sent Hoyer notice of that possibility as soon as Hoyer requested FMLA leave (Doc. No. 22-2 at 24). Hoyer has not presented any evidence suggesting the Hospital's proffered reason for her termination is pretextual, and so her disability discrimination claim fails for this additional reason.

**Reasonable Accommodation Claim**

Hoyer next argues the Hospital failed to provide her a reasonable accommodation. When Hoyer returned to work after her injury, she requested (but did not receive) a helper to assist her in answering the phones, registering patients and fulfilling her other job duties. Hoyer did not request any other accommodation at that time. Instead, Hoyer's supervisor told Hoyer to slow down, take her time, and to do one thing at a time (Doc. No. 24-1 at 15 (Hoyer Dep. at 58)). Hoyer argues this accommodation was unreasonable.

The ADA provides that employers may not "discriminate against a qualified individual on the basis of disability," which includes "not making reasonable accommodations" for a disabled employee. 42 U.S.C. § 12112(a), (b)(5)(A). To prevail on a failure to accommodate claim, an employee must show: (1) she is disabled; (2) she is qualified for the job, with or without reasonable accommodation; and (3) she was denied a reasonable accommodation. *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997). Hoyer has the initial burden of showing "that the [proposed]

7

accommodation is reasonable in the sense both of efficacious and of proportional to costs." *Monette*, 90 F.3d at 1183 (citation omitted).

Hoyer argues she could have performed her job if only the Hospital had provided her with a helper, as she requested, to assist her in duties such as answering the phone and registering patients (Doc. No. 33 at 15). While "job restructuring" is a reasonable accommodation under the ADA, 42 U.S.C. § 12111(9), this term "only pertains to the restructuring of *non-essential* duties or marginal functions of a job." *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999) (emphasis added). Moreover, the duty of "reasonable accommodation" does not require an employer to "creat[e] a new job, mov[e] another employee, promot[e] the disabled employee, or violat[e] another employee's rights under a collective bargaining agreement." *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998).

In fact, "[c]ourts have continuously found that employers are not required to assign existing employees or hire new employees to perform [essential] functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability." *Bratten*, 185 F.3d at 632 (holding that "allowing co-workers to perform as much as 20% of the essential automotive mechanic duties" for disabled employee was not reasonable accommodation); *see also Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir. 1991) (having co-workers perform essential lifting tasks of disabled employee's job not reasonable accommodation).

Hoyer tries to avoid these cases by arguing that none of her job duties were individually essential; rather, according to Hoyer, all her job duties were non-essential, marginal functions (Doc. No. 33 at 15). Hoyer would have this Court believe that her job was so amorphous that it had no core function or purpose. This assertion is simply unsupported by the record. "The term essential functions

8

means the fundamental job duties of the employment position the individual with the disability holds." 29 C.F.R. § 1630.2(n)(1). Hoyer's job description lists "register[ing] patients," "triaging incoming calls," "perform[ing] receptionist/secretarial duties and maintain[ing] patient records," among other things, as "essential" job duties (Doc. No. 22-2 at 2–3). Hoyer's own description of her job duties included "[r]egister[ing] patients," "answer[ing] phone," and "scheduling appointments" (Doc. No. 22-1 at 18). These are the duties Hoyer requested help with and were clearly "essential" to Hoyer's job. No reasonable jury could conclude otherwise. Requesting the Hospital to supply another employee to relieve Hoyer of or assist in performing these essential duties of her job was, as a matter of law, unreasonable. *See Steward v. New Chrysler*, 2011 U.S. App. LEXIS 2267, at \*30 (6th Cir. 2011); *Bratten*, 185 F.3d at 632.

Hoyer also argues that the Hospital could have extended her leave time as a reasonable accommodation (Doc. No. 37 at 3). Of course, the Hospital did extend Hoyer's leave beyond her FMLA leave by fourteen weeks. To the extent Hoyer believes the Hospital should have granted her additional leave time as a reasonable accommodation, she cannot complain of that now. Hoyer must show she requested that specific accommodation; she may not rely on an accommodation she did not request. *See Manigan*, 385 F. App'x at 478 n.5 (citing *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 518 (6th Cir. 2002)). There is no evidence she actually requested such an accommodation and the Hospital was not required to keep Hoyer's position open indefinitely. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000).

Finally, the Court notes the ADA does not require the Hospital give Hoyer the exact accommodation she requested, just to provide her with one that was reasonable. *See Hedrick v. Western Res. Care Sys.& Forum Health*, 355 F.3d 444 (6th Cir. 2004). The Hospital did so by

allowing Hoyer to proceed with her duties as quickly or as slowly as she needed prior to her medical leave.  The purpose of the accommodation was to allow Hoyer additional time to complete her job, which directly addressed Hoyer's argument that she could perform her duties, just not as quickly as before her injury.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 21) is granted and this case is dismissed.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 18, 2011